## DOUGLAS v. KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 10.   Argued October 12, 13, 1897. — Decided November 29, 1897.

By the constitution of Kentucky of 1891 it is provided that "lotteries and gift enterprises are forbidden, and no privileges shall be granted for such purposes, and none shall be exercised, and no schemes for similar purposes shall be allowed.   The General Assembly shall enforce this act by proper penalties.   All lottery privileges or charters heretofore granted are revoked."   *Held,*

(1) That the provision when applied to a previously existing lottery grant in the State of Kentucky was not inconsistent with the contract clause of the Constitution of the United States;

(2) That a lottery grant is not, in any sense, a contract within the meaning of the Constitution, but is simply a gratuity and license, which the State, under its police powers, and for the protection of the public morals, may at any time revoke, and forbid the further conduct of the lottery; and that no right acquired during the life of the grant, on the faith of or by agreement with the grantee, can be exercised after the revocation of the grant and the forbidding of the lottery, if its exercise involves a continuance of such lottery;

(3) That all rights acquired on the faith of a lottery grant must be deemed to have been acquired subject to the power of the State to the extent just indicated; nevertheless, rights acquired under a lottery grant, consistently with existing law, and which may be exercised and enjoyed without conducting a lottery forbidden by the State are, of course, not affected, and could not be affected, by the revocation of such grant;

(4) That this court when reviewing the final judgment of a state court upholding a state enactment alleged to be in violation of the contract clause of the Constitution, possesses paramount authority to determine for itself the existence or non-existence of the contract set up, and whether its obligation has been impaired by the state enactment.

THE case is stated in the opinion.

*Mr. D. W. Sanders* and *Mr. John G. Carlisle* for plaintiff in error. *Mr. Aaron Kohn* was on their brief.

*Mr. W. S. Taylor*, Attorney General of the State of Kentucky, for defendant in error. *Mr. William Goebel* was on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

By section 226 of the constitution of Kentucky of 1891 it is provided that "lotteries and gift enterprises are forbidden, and no privileges shall be granted for such purposes, and none shall be exercised, and no schemes for similar purposes shall be allowed. The General Assembly shall enforce this section by proper penalties. All lottery privileges or charters heretofore granted are revoked."

By joint resolution of the General Assembly passed January 30, 1892, the Attorney General of that Commonwealth

was directed, in execution of this constitutional provision, to immediately institute and prosecute such legal proceedings as might be necessary to suppress or revoke all lotteries or lottery franchises, privileges or charters operated in Kentucky.

In conformity with that resolution the present action was instituted in the Louisville Law and Equity Court. The petition charged that the defendants were exercising in the city of Louisville, Kentucky, and elsewhere, without lawful warrant, the right, privilege and franchise to operate a lottery. The relief asked was a judgment preventing the exercise by the defendants of such lottery franchise.

The defendant Douglas in his answer set out numerous acts of legislation under the authority of which he claimed the right to conduct the lottery in question. He insisted that the statutory and constitutional provisions invoked in support of the action were repugnant to the clause of the Constitution of the United States prohibiting any State from passing a law impairing the obligation of contracts.

The defence was sustained by the court of original jurisdiction, which overruled a demurrer to the answer; and the Commonwealth having declined to plead further, its petition was dismissed. That judgment was reversed by the Court of Appeals of Kentucky, and the validity of the above constitutional provision relating to lotteries, and as applied to the defendant's claim of a lottery privilege, was adjudged not to be repugnant to the Constitution of the United States.

The case is here upon writ of error sued out by Douglas, who claims that by the final judgment of the highest court of Kentucky he has been denied a right and immunity secured to him by the Constitution of the United States.

It appears that under authority conferred by various legislative enactments which need not be specially set forth, the Mayor and Board of Councilmen of the city of Frankfort, a municipal corporation of Kentucky, made, December 31, 1875, a written agreement with one E. S. Stewart, whereby that city sold, conveyed and assigned to him a scheme of lottery composed of 30,900 classes which it had devised, not more than two of which were to be drawn on each day, Sundays ex-

cepted, until the whole number should have been fully drawn;
Stewart to have the right to control and operate such scheme
in accordance with the provisions of the acts under which the
city proceeded.   The agreement provided that, in considera-
tion of the above sale, assignment and transfer, Stewart
should pay to the city of Frankfort various sums of money
at stated times.   As required by the agreement, and in con-
formity with the acts of Assembly, he executed to the Com-
monwealth a bond in the penal sum of one hundred thousand
dollars, conditioned for a faithful compliance with the provi-
sions of those acts, and for the payment of all sums stipulated
to be paid to the city of Frankfort, as well as all prizes drawn
in any class under said lottery scheme.

By an act approved March 22, 1890, the General Assembly
of Kentucky repealed the charter of the Frankfort lottery.
Acts, Ky. 1889–90, c. 391, vol. 1, pp. 42, 43.   But Stewart had
died before the passage of that act, and by contract with his
wife, as sole legatee and devisee of his estate, Douglas ac-
quired the right to operate the lottery scheme that had been
acquired by Stewart.

It is stated in the answer — and as this case was determined
upon demurrer to the answer, it must be assumed in the pres-
ent action to be true — that Stewart and Douglas fully com-
plied with all the provisions of the above contract, paid all
instalments due the city of Frankfort as the same became
payable, fully performed every condition of his contract and
bond, and was ready and willing to carry out the same accord-
ing to the terms, stipulations and covenants thereof.

The answer further averred that on the 11th day of Sep-
tember, 1878, the Court of Appeals of Kentucky, in the case of
*Webb* v. *The Commonwealth of Kentucky* — brought to enjoin
the exercise of the privileges of a lottery grant — adjudged
that the sale of a lottery franchise, under the authority of the
State, vested in the vendee a property right to conduct such
lottery in accordance with the terms of his contract, which
could not be repealed by the legislature of the State, and
held section 6 of article 21, chapter 28, of the Revised Statutes
attempting such repeal to be void so far as it affected the

rights of the purchaser under a contract made before the passage of the act.

.The answer also contained the following averments: "Defendant says that he has a vested right to conduct the lottery business by drawing the classes contained in the scheme which the city of Frankfort sold and conveyed to E. S. Stewart under the terms, conditions and covenants of the contract of December 31, 1875, executed and delivered as aforesaid, and that there has never been at any time more than two classes in said scheme drawn in one day, and there are a large number of classes in said scheme yet to be drawn; that his said right under his said contract was authorized and approved by the Commonwealth of Kentucky, repeatedly adjudged valid by the judicial tribunals of this State, and such right has always been held by the courts of this State inviolable and not subject to repeal, alteration or modification by subsequent legislatures. Defendant says that he has paid large sums of money for said scheme devised as aforesaid and said contract, and has made contracts and incurred liabilities involving large sums of money upon the faith of said contract, and relying upon the terms thereof and upon the decisions of the courts of the State adjudging said contract to be valid, obligatory and inviolable."

In support of the contention that the contracts for the purchase of the lottery scheme in question were valid and irrepealable, the defendant in his answer referred to an act of the General Assembly approved May 17, 1886, declaring that "every corporation or person to whom a lottery franchise has been granted by the General Assembly of this Commonwealth, and which franchise has been declared by a judgment of the Court of Appeals to be a lawful and existing one, or the lawful grantee, alienee, legatee or assignee of such franchise, shall be authorized to operate and conduct a lottery in this Commonwealth when he, she or it shall have filed with the Auditor of Public Accounts a certified copy of the judgment rendered, and the opinion delivered by the Court of Appeals in a case heard and determined before it, in which it has determined that a lottery could be lawfully operated under said

grant from the General Assembly of this Commonwealth, and obtain from the said auditor a license, (which is hereby authorized and directed to issue on the filing of said copies hereinbefore required;) reciting the filing of said copies, and authorizing the operation of said lottery for one year from the date thereof, on the condition that said licensee shall, within five days thereafter, pay to the said auditor of the State the sum of $2000; and said license issued by said auditor, as hereinbefore directed, and any and all renewals thereof, as hereinafter provided for, shall be conclusive evidence in all the courts of this Commonwealth of the rights of the licensee to operate a lottery for the period therein named, etc."

Under that statute the defendant obtained a license from the Auditor of Public Accounts, from year to year, and paid to the State $2000 annually every year since the passage of that act.

The answer also stated: "And the General Assembly of Kentucky, further recognizing the property rights of this defendant under his said contract, by an act of the General Assembly of the State approved May 12, 1884, enacted that the general council of the city of Louisville should by ordinance provide the payment of $200 per annum for every lottery office or agency therefor in the city of Louisville, which ordinance was accordingly passed by the general council of the city of Louisville and is now a valid and existing law, and this defendant has paid the city of Louisville $200 for each office operated by him, and at the time of the institution of this suit had paid the city of Louisville the sum of $200 for each office he then operated in advance for one year from the time of the issue of the license, and that the said licenses thus obtained have not yet expired."

The defendant, in addition, pleaded *res judicata* in respect of the matters involved in this action. This defence is thus set forth: "The defendant further states that after the making of the contract between the city of Frankfort and said E. S. Stewart, as set forth in the second paragraph hereof, the Commonwealth of Kentucky, by her attorney general,

filed a petition in the Franklin Circuit Court against the city of Frankfort, the said E. S. Stewart and others, in the nature of a writ of *quo warranto*, alleging in said petition that the said E. S. Stewart and others claiming under him were selling lottery tickets under the said grant, claiming under the contract referred to in the second paragraph herein; and further alleged that the said board of councilmen of the city of Frankfort had no title to said lottery franchise and had no authority to sell and convey the scheme as set forth in said contract, and that the defendants in said action were engaged in selling tickets under said contract in violation of law, and that the exercise of the privileges by them was injurious to public morals by tempting the people into the immoral habit of gaming, and that the said defendants were usurping the franchise, all of which matters and things are now relied upon in this action and are the identical matters for which relief is sought in this case, and that by the said petition the plaintiffs herein sought in said action to enjoin and oust the defendants therein from proceeding further to sell tickets and operate the lottery privileges claimed by them, which are the identical rights claimed herein, and the court was asked to hold the said franchise void and to annul and adjudge as cancelled all rights of the defendants therein; that said defendants filed their answer in said case and joined issue upon the allegations of the said petition; that thereafter, upon motion of the Commonwealth of Kentucky, the said action was transferred from the Franklin Circuit Court to the Oldham Circuit Court; that in the said case such proceedings were had that the court finally entered a judgment declaring that under the act of March 16, 1869, referred to in paragraph 2 hereof, the city of Frankfort and the board of councilmen of said city did obtain the legal title to said lottery franchise and the classes thereof; and, further, that the said city of Frankfort, under the act of March 28, 1872, referred to in paragraph 2, were authorized to sell and dispose of said scheme upon such terms as they deemed proper, and that said act was constitutionally valid and binding and authorized such sale and transfer, and that the contract made between the city of Frankfort and the said E. S.

Stewart, which is the same contract relied upon herein, was a valid and subsisting obligation and enforceable as a legal obligation. From said judgment of the Oldham Circuit Court, the Commonwealth of Kentucky prayed an appeal to the Court of Appeals of Kentucky, and the said Court of Appeals of Kentucky, on the 27th day of February, 1878, entered a judgment affirming the judgment of the Oldham Circuit Court, and adjudged in said action that the General Assembly of the Commonwealth of Kentucky, by the act of March 16, 1869, did confer upon the board of councilmen of the city of Frankfort the said lottery franchise, and that the said act was valid, and that the city of Frankfort, by reason thereof, was the owner of the scheme named in the contract referred to, and that under the act of March 28, 1872, the city of Frankfort had the legal right to sell and dispose of the same upon such terms and conditions as it deemed proper, and that the said sale to the said E. S. Stewart and the contract in relation thereto was binding and valid and had been entered into in strict conformity with the said acts of the General Assembly. A copy of the pleadings in said case and the opinions and judgments of said courts will be filed herewith as a part hereof. The defendant says that by reason of the proceedings in said action and the judgment of the courts thereupon, the plaintiff is barred from bringing or maintaining this action; that the legality of the act of March 28, 1872, and the validity of the contract of E. S. Stewart with the city of Frankfort are matters *res judicata* by reason of said judgment, and he pleads and relies upon the same herein."

The Federal question presented for our determination arises upon the claim of the plaintiff in error — which was denied by the final judgment of the highest court of Kentucky — that the agreement between the city of Frankfort and E. S. Stewart, by which the latter became the owner of the lottery scheme devised by that city, under the authority of law, was a contract the obligation of which the State was forbidden by the Constitution of the United States to impair either by legislative enactment or by constitutional provision.

If this interpretation of the Federal Constitution be correct,

it will follow that any provision in the constitution or in the statutes of Kentucky forbidding lotteries and gift enterprises in that Commonwealth, and revoking the lottery privileges or charters theretofore granted, is null and void as to the defendant Douglas, who succeeded to the rights acquired by Stewart under the agreement of 1875 with the city of Frankfort. This necessarily results from the declaration that the Constitution of the United Sates is the supreme law of the land, anything in the constitution or laws of any State to the contrary notwithstanding.

This court had occasion many years ago to say that the common forms of gambling were comparatively innocuous when placed in contrast with the wide spread pestilence of lotteries; that the former were confined to a few persons and places, while the latter infested the whole community, entered every dwelling, reached every class, preyed upon the hard earnings of the poor, and plundered the ignorant and simple. *Phalen* v. *Virginia*, 8 How. 163.

Is a State forbidden by the supreme law of the land from protecting its people at all times from practices which it conceives to be attended by such ruinous results? Can the legislature of a State contract away its power to establish such regulations as are reasonably necessary from time to time to protect the public morals against the evils of lottery?

These questions arose and were determined, upon much consideration, in *Stone* v. *Mississippi*, 101 U. S. 814, 819, 821.

It will be seen from the report of that case that the legislature of Mississippi chartered the Mississippi Agricultural, Educational and Manufacturing Aid Society, with authority to raise money by way of lottery; and in consideration thereof the society paid $5000 into the treasury of the State, and agreed to pay, and did pay, an annual tax of $1000, together with one half of one per cent, on the amount of receipts derived from the sale of certificates. While the Society's charter was in force, the State adopted a new constitution, declaring that the legislature should never authorize a lottery, nor should the sale of lottery tickets be allowed, nor any lottery theretofore authorized be permitted to be drawn or tickets

therein be sold. This was followed by the passage of an act prohibiting lotteries, and making it unlawful to conduct one in the State. The question was then raised by an information in the nature of *quo warranto*, whether the lottery privilege given by the Society's charter could be withdrawn or impaired by the state legislation — that Society having, as was conceded, complied with all the conditions upon which its charter was granted. The Supreme Court of Mississippi held that the State could withdraw the lottery privilege which it had granted. And that conclusion was questioned upon writ of error sued out from this court.

Chief Justice Waite, who delivered the unanimous judgment of the court in that case, said: "The question is therefore directly presented, whether in view of these facts, the legislature of a State can, by the charter of a lottery company, defeat the will of the people, authoritatively expressed, in relation to the further continuance of such business in their midst. We think it cannot. No legislature can bargain away the public health or the public morals. The people themselves cannot do it, much less their servants. The supervision of both these subjects of governmental power is continuing in its nature, and they are to be dealt with as the special exigencies of the moment may require. Government is organized with a view to their preservation, and cannot divest itself of the power to provide for them. For this purpose the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself." Again, referring to lotteries: "They disturb the checks and balances of a well-ordered community. Society built on such a foundation would almost of necessity bring forth a population of speculators and gamblers, living on the expectation of what, 'by the casting of lots, or by lot, chance or otherwise,' might be 'awarded' to them from the accumulation of others. Certainly the right to suppress them is governmental, to be exercised at all times by those in power, at their discretion. Any one, therefore, who accepts a lottery charter does so with the implied understanding that the people, in their sovereign capacity and through their properly constituted agencies, may

resume it at any time when the public good shall require, whether it be paid for or not. All that one can get by such a charter is a suspension of certain governmental rights in his favor, subject to withdrawal at will. He has in legal effect nothing more than a license to enjoy the privilege on the terms named for the specified time, unless it be sooner abrogated by the sovereign power of the State. It is a permit, good as against existing laws, but subject to future legislative and constitutional control or withdrawal."

It is suggested that, in important particulars, the opinion and judgment in *Stone* v. *Mississippi* was modified by the decision in *New Orleans* v. *Houston,* 119 U. S. 265, 275. So far from this being true the principles announced in the former case were recognized, and held to have no application in the latter case. In *New Orleans* v. *Houston* the question was whether the legislature of Louisiana could destroy or impair a lottery charter granted and authorized by the constitution of that State. This court, speaking by Mr. Justice Matthews, said: "It is undoubtedly true that no rights of contract are or can be vested under this constitutional provision which a subsequent constitution might not destroy without impairing the obligation of a contract, within the sense of the Constitution of the United States, for the reason assigned in the case of *Stone* v. *Mississippi*. But an ordinary act of legislation cannot have that effect, because the constitutional provision has withdrawn from the scope of the police power of the State, to be exercised by the General Assembly, the subject-matter of the granting of lottery charters, so far as the Louisiana State Lottery Company is concerned, and any act of the legislature contrary to this prohibition is upon familiar principles null and void. The subject is not within the jurisdiction of the police power of the State, as it is permitted to be exercised by the legislature under the constitution of the State." So that in *New Orleans* v. *Houston* it was decided, that, while a lottery grant was not a contract within the meaning of the Federal Constitution, the obligation of which was protected against impairment by the State making the grant, the legislature could not strike

down a lottery which the fundamental law of the State had authorized.

In the argument on behalf of the plaintiff in error much stress was laid upon former decisions of the Court of Appeals of Kentucky relating to rights acquired under lottery grants. Our attention has been particularly called to *Gregory* v. *Shelby College Lottery Trustees*, 2 Met. (Ky.) 589, 598. From the report of that case it appears that the legislature of Kentucky in 1838 granted to Shelby College the privilege of raising the sum of one hundred thousand dollars by lottery, with authority to sell or dispose of the scheme or any classes of the lottery. In 1855 the provision of the Revised Statutes, declaring that all lottery privileges should cease, took effect. And the question arose as to the effect of that enactment upon the rights of one who had loaned money to the College upon the faith of the lottery grant, and to secure the loan had taken from the trustees of the institution a mortgage upon their rights under the lottery franchise. The Court of Appeals of Kentucky, conceding that the grant of a privilege to raise money by a lottery was a mere gratuity, was not an act of incorporation, conferred no charter rights, and did not amount to a contract, proceeded: "Although, therefore, the legislature has the power to repeal the grant of a lottery privilege where no rights have accrued under it, and though lotteries have a demoralizing tendency and exercise a very pernicious influence over the ignorant and credulous part of the community, and for this reason have been almost universally denounced by the law-making power in different States of the Union, yet if rights have been acquired or liabilities incurred upon the faith of the privilege conferred by the grant, it would be obviously unjust to permit such rights to be divested by a legislative revocation of the privilege. If, therefore, any vested rights have been acquired under the present grant before the passage of the repealing law, then, to the extent of such rights at least, the law must be regarded as unconstitutional and inoperative. This conclusion is, we think, fully sanctioned by the following adjudged cases: *Dartmouth College* v. *Woodward*, 4 Wheat. 518 to 643; *Fletcher* v.

*Peck*, 9 Cranch, 87; *University of Maryland v. Williams*, 9 Gill & Johnson, 365; *Terret v. Taylor*, 9 Cranch, 43, 52; *Louisville v. University of Louisville*, 15 B. Mon. 642, 692. The plaintiff, Waller, before the repealing act was passed, had, on the faith of the lottery grant, advanced large sums of money, which were appropriated by him for the benefit of Shelby College, and the trustees of the college had mortgaged to him their rights under the lottery franchise for his indemnity. As the lottery privilege was granted for the benefit of the Shelby College, and the money was advanced by Waller with the assent of the trustees of the college, under the belief that it would be realized eventually from the lottery, he became thereby invested with the right to the use of the grant until from such use the sum was produced which he had advanced for the benefit of the college. This was a vested right of which he could not be divested by an act of the legislature. So far, therefore, as the repealing act interferes with or affects this right, it is unconstitutional and inoperative." These principles were recognized in cases subsequently decided by the same court.

The defendant insists that his rights having been acquired when these decisions of the highest court of Kentucky were in full force, should be protected according to the law of the State as it was adjudged to be when those rights attached. But is this court required to accept the principles announced by the state court as to the extent to which the contract clause of the Federal Constitution restricts the powers of the state legislatures? Clearly not. The defendant invokes the jurisdiction of this court upon the ground that the rights denied to him by the final judgment of the highest court of Kentucky, and which the State seeks to prevent him from exercising, were acquired under an agreement that constituted a contract within the meaning of the Federal Constitution. This contention is disputed by the State. So that the issue presented makes it necessary to inquire whether that which the defendant asserts to be a contract was a contract of the class to which the Constitution of the United States refers. This court must determine — indeed, it cannot consistently with its duty refuse

to determine — upon its own responsibility, in each case as it arises, whether that which a party seeks to have protected under the contract clause of the Constitution of the United States is a contract the obligation of which is protected by that instrument against hostile state legislation.

In *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, 443, which involved the contract clause of the Constitution, it was contended that this court should accept as conclusive the interpretation placed by the Supreme Court of Ohio upon the constitution and laws of that State as affecting certain state legislation which, it was alleged, constituted a contract, the obligation of which could not be impaired by legislation. Mr. Justice Wayne, delivering the unanimous judgment of the court, said: " The constructions given by the courts of the states to state legislation and to state constitutions have been conclusive upon this court, *with a single exception*, and that is when it has been called upon to interpret the contracts of States, 'though they have been made in forms of law,' or by the instrumentality of a State's authorized functionaries in conformity with state legislation. It has never been denied, nor is it now, that the Supreme Court of the United States has an appellate power to revise the judgment of the Supreme Court of a State, whenever such a court shall adjudge that not to be a contract which has been alleged, in the forms of legal proceedings, by a litigant, to be one, within the meaning of that clause of the Constitution of the United States which inhibits the States from passing any law impairing the obligation of contracts. Of what use would the appellate power be to the litigant who feels himself aggrieved by some particular state legislation if this court could not decide, independently of all adjudication by the Supreme Court of a State, whether or not the phraseology of the instrument in controversy was expressive of a contract and within the protection of the Constitution of the United States, and that its obligation should be enforced, notwithstanding a contrary conclusion by the Supreme Court of a State? It never was intended, and cannot be sustained by any course of reasoning, that this court should or could with fidelity to the Constitution of the

United States follow the construction of the Supreme Court of a State in such a matter, when it entertained a different opinion; and in forming its judgment in such a case, it makes no difference in the obligation of this court in reversing the judgment of the Supreme Court of a State upon such a contract, whether it be one claimed to be such under the form of state legislation, or has been made by a covenant or agreement by the agents of a State, by its authority."

The doctrine that this court possesses paramount authority when reviewing the final judgment of a state court upholding a state enactment alleged to be in violation of the contract clause of the Constitution, to determine for itself the existence or non-existence of the contract set up, and whether its obligation has been impaired by the state enactment, has been affirmed in numerous other cases. *Ohio Life Ins. Co.* v. *Debolt,* 16 How. 416, 452; *Wright* v. *Nagle,* 101 U. S. 791, 794; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683, 697; *Vicksburg, Shreveport, &c. Railroad* v. *Dennis,* 116 U. S. 665, 667; *N. O. Waterworks Co.* v. *Louisiana Sugar Co.,* 125 U. S. 18, 36; *Bryan* v. *Board of Education,* 151 U. S. 639, 650; *Mobile & Ohio Railroad* v. *Tennessee,* 153 U. S. 486, 493; *Bacon* v. *Texas,* 163 U. S. 207, 219.

In view of these adjudications it is clear that we are not required to accept as authoritative in this case the decision of the Court of Appeals of Kentucky in *Gregory* v. *Shelby College Lottery Trustees,* above cited, to the effect that a legislative revocation of a lottery grant is a violation of the Constitution of the United States so far as such revocation affects rights acquired on the faith of the privilege conferred by the grant, and the exercise of which involves the continuance of that privilege for such time as may be necessary for the full enjoyment of those rights. On the contrary, we hold that a lottery grant is not, in any sense, a contract within the meaning of the Constitution of the United States, but is simply a gratuity and license, which the State, under its police powers, and for the protection of the public morals, may at any time revoke, and forbid the further conduct of the lottery; and that no right acquired during the life of the grant, on the

faith of or by agreement with the grantee, can be exercised after the revocation of such grant and the forbidding of the lottery, *if its exercise involves a continuance of the lottery as originally authorized.* All rights acquired on the faith of a lottery grant must be deemed to have been acquired subject to the power of the State to the extent just indicated; nevertheless, rights acquired under such a grant consistently with the law as it was when they were so acquired, and which rights may be exercised and enjoyed without conducting a lottery forbidden by the State, are, of course, not affected, and could not be affected, by the revocation of such grant. Here the defendant insists that as the agreement under which Stewart became the owner of the Frankfort lottery scheme was lawful when made, he, as assignee of Stewart, is protected by the Constitution of the United States in carrying on that lottery, despite the prohibition of all lotteries and the revocation of all lottery grants by the present constitution of Kentucky adopted after the transfer to Stewart of the benefit of that scheme. For the reasons stated, this contention must be overruled. It could not be sustained without overruling *Stone* v. *Mississippi,* which we have no inclination to do.

Some stress has been laid by counsel upon the fact that, in an action brought by the State in the nature of *quo warranto* against the city of Frankfort, and which was determined upon appeal by the Court of Appeals of Kentucky on the 27th day of February, 1878, it was adjudged that the contract between that city and Stewart was a valid and binding contract; and, consequently, the State is barred, upon the principle of *res judicata,* from maintaining the present action. The opinion in that case has not been published in the regular reports, but a copy of it appears in the record. It is sufficient, in answer to the contention of the defendant, to say that the case referred to, as appears from the opinion of the state court, involved nothing more than the validity of the agreement of 1875 between the city of Frankfort and Stewart, under the law as it was when such agreement was made, and did not necessarily involve any inquiry as to the power of the State, by legislative or constitutional provision, and without violating

the clause of the Constitution of the United States prohibit-
ing the passage of state laws impairing the obligation of con-
tracts, to revoke an existing lottery grant and prohibit all
lotteries within its limits. The thing adjudged in the case
referred to fully appears from the statement made by the
Court of Appeals of Kentucky of the conclusion which it
reached, namely : "We therefore conclude that the legislature
of 1869 conferred on the board of councilmen of the city of
Frankfort franchises, powers and authority equal or exactly
similar to those that had by the act of 1838 been conferred on
the managers, which include the privilege of raising one hun-
dred thousand dollars by operating a lottery." A decision
that the agreement between the city of Frankfort and Stewart
was, when made, valid under the laws of Kentucky, did not
determine, as between the State and those asserting rights
under that agreement, that the State could not, by subsequent
legislative enactment or by constitutional provision, and so
far as the Constitution of the United States was concerned,
prohibit all lotteries, and thereby prevent the exercise by
those asserting the right under or by virtue of that agree-
ment, to carry on a lottery against the expressed will of the
State.

We have felt some embarrassment arising from the conflict
between the present decision and the former decisions of the
highest court of Kentucky upon the general subject of lotter-
ies, and as to the power of the State, by contract, to so tie its
hands that it may not revoke, in its discretion, grants of lot-
tery privileges and prohibit the carrying on of all lotteries.
But that embarrassment has been greatly lessened by the fact
that that court, in its opinion in the present case, after refer-
ring to *Stone* v. *Mississippi*, said : "It seems to us that this
decision defining the provision of the Federal Constitution as
to what subjects are contracts and protected by it, and that
lottery grants, though paid for, are not protected by said pro-
vision, is binding upon this court, and has the effect to over-
rule its decisions holding the contrary view. But apart from
the binding force of the decision, it seems that its logic is
conclusive and convincing in drawing the distinction between

the contractual and governmental power of the States, to wit, that the provisions of the Federal Constitution in reference to contracts only inhibits the States from passing laws impairing the obligations of such contracts as relate to property rights, but not to subjects that are purely governmental." In the same opinion it is well observed that, under any other doctrine than that announced in *Stone* v. *Mississippi*, the legislature, by giving or bartering away the power to guard and protect the public morals, could " convert the State into dens of bawdy houses, gambling shops and other places of vice and demoralization, provided the grantees paid for the privileges, and thus deprive the State of its power to repeal the grants and all control of the subjects as far as the grantees are concerned, and the trust duty of protecting and fostering the honesty, health, morals and good order of the State would be cast to the winds, and vice and crime would triumph in their stead. Now, it seems to us that the essential principles of self-preservation forbid that the Commonwealth should possess a power so revolting, because destructive of the main pillars of government."

We perceive no error in the judgment of the Court of Appeals of Kentucky, and it is

*Affirmed.*

MR. JUSTICE SHIRAS agrees that the judgment should be affirmed, but does not concur in all the reasoning of this court.