## UNITED STATES v. PORHOWNIK et al.

No. 201, Docket 21590.

United States Court of Appeals
Second Circuit.

Argued May 2, 1950.

Decided May 24, 1950.

Alexander Porhownik, New York City, for appellants.

Geo. G. Allen, New York City, Benj. Freidson, Washington, D. C., Ed Dupree, General Counsel, Leon J. Libeu, Assistant General Counsel, Nathan Siegel, Special Litigation Attorney, Washington, D. C., for appellee.

Before L. HAND, Chief Judge, and CHASE and CLARK, Circuit Judges.

**L. HAND, Chief Judge.**

The defendants appeal from a summary judgment under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., enjoining the corporate defendant from charging more than a maximum rent for two dwelling apartments in New Jersey, and compelling the two defendants to refund excess rents collected by the corporation. The individual defendant is the corporation's president. The facts, which were not in dispute, were as follows. Apartment No. 204 the corporation let on August 30, 1947, to one, Moses, at $115 a month, an advance of 15%. This lease ran from August 1, 1947, to December 31, 1948, and a copy of it was filed with the "Expediter" as the act required.[1] Apartment No. 402 the corporation let to one, Reichert, on August 14, 1947, at $69 a month, likewise an advance of 15%; and this lease also was to run from August 1, 1947, to December 31, 1948, and was filed with the "Expediter." In January, 1948, nearly a year before the terms expired, the parties cancelled both leases, and the corporation let the apartments to new lessees: Apartment No. 204 from January 1, 1948, to December 31, 1948 (afterwards extended to December 31, 1949), at $150 a month; Apartment No. 402 from February 1, 1948, to September 30, 1949, at $100 a month. Both these new leases were filed with the "Expediter." The position of the plaintiff is that, although, when the 1948 leases were made, the rents reserved were lawful, by the amendment of § 204(b)(3) [2] of 1949 they were reduced to $115 and $69 respectively —the rents reserved in the 1947 leases— and that both defendants became liable to restore to the lessees the surpluses collected after April 1, 1949.

The first question is of the meaning of the amendment of 1949 to § 204(b). We quote in the margin [3] that part of § 204(b) of 1947 which followed the first proviso, from which it will be seen that lessors who let premises during the year 1947, were free to raise rents by 15%, if the terms created lasted throughout the year 1948, provided a copy of the lease was filed with the "Expediter." The first of the two last sentences in the subsection declared that such leases should be immune from regulation while the term lasted; and the second sentence declared that premises so let should not be subject to rent control after December 31, 1947. It thus became possible for a lessor to free his property from future rent control after January 1, 1948, by leasing it in 1947 for a term which extended throughout the year 1948. The rents reserved in the 1948 leases of Apartments No. 204 and No. 402 were therefore valid when made, and remained so until April 1, 1949, for the amendment to § 204(b) made in 1948 [4] had no effect upon them.

The outcome of this appeal depends upon the proper interpretation of

1. c. 163, Title II, § 204(b), 61 Stat. 198.

2. § 1894(b) (3), Title 50 War, Appendix, U.S.C.A.

3. "*And provided further*, That in any case in which a landlord and tenant, on or before December 31, 1947, voluntarily enter into a valid written lease in good faith with respect to any housing accommodations for which a maximum rent is in effect under this section and such lease takes effect after the effective date of this title and expires on or after December 31, 1948, and if a true and duly executed copy of such lease is filed, within fifteen days after the date of execution of such lease, with the Housing Expediter, the maximum rent for such housing accommodations shall be, as of the date such lease takes effect, that which is mutually agreed between the landlord and tenant in such lease if it does not represent an increase of more than 15 per centum over the maximum rent which would otherwise apply under this section. In any case in which a maximum rent for any housing accommodations is established pursuant to the provisions of the last proviso above, such maximum rent shall not thereafter be subject to modification by any regulation or order issued under the provisions of this title. No housing accommodations for which a maximum rent is established pursuant to the provisions of the last proviso above shall be subject, after December 31, 1947, to any maximum rent established or maintained under the provisions of this title." 61 Stat. 198.

4. Pages 94 and 95, Vol. 62 St. at L.

subdivisions (2) and (3) which were added to § 204(b) in 1949, and which we also quote in the margin.[5] The plaintiff says that subdivision (3) applies to the 1948 leases; the defendants say that subdivision (2) alone applies; but it is clear that in this the defendants are mistaken. Although the 1948 leases were "in effect" on April 1, 1949, they had not been "entered into and filed in accordance with the provisions of this subsection (b) as then in effect"; that is, as it stood in 1948 when the leases were made. The 1947 leases of Apartments No. 204 and No. 402 had been at rents not more than 15% higher than the preceding rents, and they had been "filed" with the "Expediter," so that not only were the rents reserved in them immune from regulation while they lasted, but when they ended, the premises were no longer "subject" to any rent control, and, being thus free, the lessor—the corporation—was under no duty to "file" them. The filing actually made was a nullity, for it was not required by, and could not be, "in accordance with § 204(b)." Therefore subdivision (3) reasserted control over the premises; the lawful rents thereafter could be no greater than the rents reserved in the 1947 leases; and the corporation was accountable for any excess. It is true that subdivision (3) also applies to leases made under § 204(b) as it stood in 1947 which had not "expired" on April 1, 1949, and it must be owned that as to such leases subdivision (2) and subdivision (3) appear to overlap. Even so, that has no effect upon the result here; it would be relevant only in case the 1947 leases had extended beyond April 1, 1949.

There can be no doubt that by the amendment of 1949 Congress very deliberately meant to end the exemption given by the Act of 1947. This appears, not only from the language used, but from the history of the amendment of 1949, as it passed the Senate. The Act of 1947 had been in some sense a compromise. Lessors were limited to an increase of 15% over existing rents upon any leases made during 1947 which lasted through the year 1948 or beyond; in exchange, they were promised complete exemption from future control after 1947. By 1949 Congress, yielding to the continued scarcity of "housing accommodations," decided to reëstablish rent control, and it did not wish to leave as a privileged exception those lessors who had succeeded in letting their premises in 1947 for a period extending beyond 1948. Indubitably in many instances this may have been a hardship, as a very vocal opposition in the Senate pointed out in the debate. But this opposition was overruled; and that could only have been because the majority meant to do exactly what the opposition complained of.

▮ The defendants challenge the constitutionality of the statute so interpreted; they say that it is too obscure to be understood; and that it denies "due process of law" to property owners. The proper understanding of the language does demand a somewhat exacting scrutiny; like so many regulatory statutes, it is full of verbal thickets which must be penetrated

5. "(2) In any case in which a valid written lease with respect to any housing accommodations was entered into and filed in accordance with the provisions of this subsection (b) as then in effect, and such lease was in effect on the effective date of the Housing and Rent Act of 1949, such housing accommodations shall be subject to the provisions of this title and, until such lease is terminated or expires, the maximum rent for said accommodations shall be the rent set forth in said lease.

"(3) In any case in which a valid written lease with respect to any housing accommodations was entered into and filed in accordance with the provisions of this subsection (b) as then in effect, and such lease has heretofore terminated or expired or hereafter terminates or expires, such housing accommodations shall be subject to the provisions of this title and the maximum rent for said accommodations shall be the rent set forth in said lease, plus or minus applicable individual adjustments: *Provided, however,* That if such housing accommodations are in a defense-rental area in which a general increase in maximum rents has been or is hereafter granted, the maximum rent shall be said lease rent plus or minus applicable individual adjustments, or the maximum rent in the absence of a lease, whichever is higher."

and are impenetrable without considerable labor. However, such verbal labyrinths are often the only protection which the individual has against what without them would be the fiat of minor officials. The case at bar is nothing. like as baffling as cases which again and again came up under the statutes and regulations fixing prices during the war. The defendants misconceive the meaning of the decisions on which they rely, of which United States v. L. Cohen Grocery Company, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045, may be taken as a sample, and which held statutes bad because the standards imposed were too vague to be understood. There is nothing of that sort here; the meaning is indeed obscure without a good deal of effort, but that arises from the complicated intermeshing of the provisions, not from any uncertainty in the standard to be applied.

Nor is there any objection to the statute on the score of the Fifth Amendment. Assuming for argument that the Act of 1947 contained a promise that, if lessors accepted the limitation on rents for the year 1947 and 1948, their premises would be immune from future control, the promise would not bind a succeeding Congress, or for that matter the Congress which made it. The continued power to regulate the price of essential commodities or services in times of scarcity is vital to any society, and a shortage of houses is an acute example. To permit those, who are in possession of an inadequate supply, to exploit their advantage without restraint may lead to the gravest disturbances. The Supreme Court has again and again declared that the legislature of a state in spite of the Contract Clause is incapable of surrendering / its legislative powers [6]; and that doctrine applies even more clearly to acts of Congress. As it struggled

into recognition it was indeed masked as an exception depending upon the Police Power but the contours of that convenient catch-all have never been clear, and whatever its scope today, certainly it includes the equitable distribution of existing dwellings.

■ There remains the question of the form of the injunction, for the individual defendant does not complain of being held jointly liable with the corporation to repay the excess rents. We do not understand that the objection includes subdivision "a" of the injunction which generally forbids "violating" the Act and regulations, and we do not pass upon the propriety of such a provision. On the other hand, we do hold that it was reasonable and proper to forbid the lessor to cut off the services of gas, water and the like in the apartments, as a means of enforcing the payment of excess rent, or of evicting the lessees for the same cause. The individual defendant is mistaken in supposing that he is individually included in the injunction. The relevant words are as follows: "the defendant 25 Trinity Corporation, its agents, servants, employees, attorneys, and all persons in active concert or participation with any of them." Rule 65(d) [7] is in the same language, except that it adds at the beginning "officers," and at the end, "who receive actual notice of the order by personal service or otherwise"—a limitation which would in any event be implied. In National Labor Relations Board v. Blackstone Manufacturing Co.[8] we said that such appendages—in that case, "successors" and "assigns"—added nothing; and in Regal Knitwear Company v. National Labor Relations Board, 324 U.S. 9, 13, 65 S.Ct. 478, 89 L.Ed. 661, the Supreme Court approved the ruling. The injunction does not charge the individual defendant with any conduct of the corpora-

6. Beers Company v. Massachusetts, 97 U. S. 25, 24 L.Ed. 989; Stone v. Mississippi, 101 U.S. 814, 25 L.Ed. 1079; Butchers' Union Co. v. Crescent City Co., 111 U. S. 746, 4 S.Ct. 652, 28 L.Ed. 585; Douglas v. Commonwealth of Kentucky, 168 U.S. 488, 18 S.Ct. 199, 42 L.Ed. 553; Texas & New Orleans R. Co. v. Miller, 221 U.S.

408, 31 S.Ct. 534, 55 L.Ed. 789; Pennsylvania Hospital v. City of Philadelphia, 245 U.S. 20, 38 S.Ct. 35, 62 L.Ed. 124.

7. Rule 65(d), Federal Rules of Civil Procedure, 28 U.S.C.A.

8. 2 Cir., 123 F.2d 633, 635.

tion which he does not personally abet, though it does charge him with any that he does. In that respect he stands in the same position as one who, though he is not even a party to the action, takes part in the violation of an injunction of which he has notice.[9] The added language may be unnecessary but the individual defendant cannot justly complain of it.

Judgment affirmed.

9. Alemite Manufacturing Corp. v. Staff, 2 Cir., 42 F.2d 832.