JOSIAH MARSHALL et al. *vs.* M. E. & S. V. KING et al.

The act of the legislature of 1846, declares that if a married woman "die possessed of slaves or other personal chattels as her separate property, leaving issue of the body, either by a former husband or by her surviving husband, such slaves and other personal chattels shall descend to her children in equal shares," &c. *Held*, that the children of the first marriage are entitled in this case to an equal share of their deceased mother's personal chattels with the children of the second marriage.

A vested right has been defined to be "an immediate fixed right of present or future enjoyment."

The act of 1839, giving a married woman separate rights in certain property thereafter acquired by her, does not create a vested right in the children of such married woman to such personal property so held by her, but only such

8 *

Marshall et al. *v.* King et al.

a right as any child has in the property of its ancestor,—the right to inherit and possess the same according to the laws of the land in force at the death of the ancestor.   *Held,* that the act of 1846 did not impair any vested right in M. which had theretofore attached under any other act.

To enable distributees to recover their distributive shares, it is necessary that administration should be taken out on the estate.

ON appeal from the probate court of Franklin county.

The defendants in error, by their next friend, filed a petition in the probate court of Franklin county, which states that their mother, who was the owner of sundry slaves, and a widow, in December, 1843, married J. Marshall, and died in 1847, leaving complainants' children by her first marriage, and one child by her last marriage, as her heirs at law.   That J. Marshall was their guardian, and in possession of the slaves of their mother, but refused to inventory the shares of defendants in error in the said slaves.

*J. T. McMurran,* for plaintiffs in error.

We think the demurrer ought to have been sustained, and consequently that the judgment of the court below ought to be reversed, on two grounds:

First.   That, whoever may be entitled to the property, either as heirs, distributees, or husband of the deceased, it could only be arrived at through an administrator, as Mrs. Marshall died intestate.   An administrator of the estate is legally necessary, and Marshall, being in possession, can hold it until such administrator shall be appointed, and make demand.

This position is so clearly maintained by the authorities, that we cannot suppose it will be disputed.   We will refer to a few authorities.   Clancy on Mar. W. 4–11; North on Probates, 112, note; *Jenkins* v. *Freyer,* 4 Paige, 47; *Worden* v. *Bagley, Executor,* 13 Wend. 453; *Browning* v. *Watkins,* 10 S. & M. 482; *McCrea* v. *Walker,* 4 Howard, 455.

It is too clear to admit of argument, as all the authorities show, that even if the court were to order a division and inventory of the property, as prayed for in the petition, it would be no bar to a suit by an administrator, and that no title whatever vests in the distributees on the death of the intestate; and, con-

sequently, that the appellees cannot maintain their petition, even if, on the regular distribution of the property, after administration granted, they should be entitled to the slaves, as claimed by them.

The probate court has no jurisdiction of the case, as the authorities cited abundantly show. The very ground on which the court of chancery decided that chancery might take jurisdiction in such a case is, that the party is remediless in any other tribunal, for the want of administration; and, therefore, equity will interpose. *McCrea* v. *Walker*, already cited.

The other ground on which we rely for a reversal of the judgment of the probate court on the demurrer is, that, on the facts stated in the petition, the child of the second marriage, Adathea, is entitled to the slaves; in other words, that the act of 1839, instead of the act of 1846, governs or furnishes the rule for the disposition of the slaves, inasmuch as the marriage between Mr. Marshall (the father) and the mother took place, the negroes were reduced to actual possession, and Adathea born before the death of the mother. I proposed to discuss this point fully, as I conceive it to be a new one, not judicially decided in the case of *Fowler* v. *Kell*, and important in settling the construction and effect of these acts of 1839 and 1846 regarding the rights and property of married women,—believing that I should be able to show that the 4th section of the act of 1839 must govern.

*J. Marshall*, on the same side.

*Montgomery & Boyd*, for defendants in error.

This case involves the construction of the act of 1839, commonly called the married woman's law; and more particularly the last clause of § 4, in connection with the amendment by the act of 1846. Hutch. Code, 497, 498.

The act of 1839 clearly secures to the wife a separate property in slaves owned by her previous to marriage; and by the law, as it then stood, if nothing more had been done than is contained in the second section, the husband, in case of survivorship, would have been entitled to it as husband, not only

in exclusion of her children generally, but of those of the marriage.   Clancy on Mar. W. 11.

This construction of the statute of distribution, which has been adopted by our courts, is altered by the last clause of § 4 of the act of 1839.

The question arises, Is this a limitation or condition of the estate, or is it a statute of descent and distribution?

The language is clearly that of a statute of distribution or descents.   In case of the death of the wife, the slaves descend and go to the children of the marriage, and in default of such, to the husband and his heirs.   The use of the word "descend" fixes the meaning of the sentence, unless we take it for granted the legislature did not know the meaning of the word.   If the husband took as a purchaser, as is contended by the counsel on the other side, why did the legislature say he should take by descent?

If this was a statute of descents, then no rights could be acquired under it until the death of the wife; and, as she died since the act of 1846, which provides that the property shall descend to the children of each marriage in equal shares, these complainants were entitled to have their share of the property inventoried, &c.

If the statute gives the husband, in virtue of the marriage, an estate in remainder, what would become of it after possibility of issue extinct? or, after the death of the husband, without issue of the marriage?   If he took a contingent remainder by purchase, would not his heirs be entitled after the death of the wife, who survived her husband?

The answers to these interrogatories is found in the second section.   On the death of the husband, wife surviving, with or without issue, all his interest under the statute is gone.   He had no estate but for life of his wife, or his own life, if he died first.   It was but a usufruct during their joint lives.

There is no such thing as a vested remainder which can be defeated by the party having the life estate.

The doctrine of marital rights was settled at last term.   14 S. & M. 74; *Clarke* v. *McCreary*, 12 S. & M. 347.

Mr. Justice YERGER delivered the opinion of the court.

On the 14th day of December, 1843, Josiah Marshall intermarried with Missouri King, and on the 13th day of February, 1846, Adathea Marshall, the only child and issue of this marriage, was born. Mrs. Marshall died during the year 1847, and left her surviving, the appellees, the children of a former marriage, and the appellant, a child by the last marriage. At the date of the marriage with Marshall, Mrs. King possessed certain slaves in her own right, of which slaves, she died seized. The appellees contend, that they are entitled to distribution of the slaves in equal portion, with their half sister, the child of the last marriage. For the appellant it is insisted, that by virtue of the fourth section of the act of 1839, Hutch. Code, 496, 497, " to secure the rights of married women," all the slaves of which Mrs. Marshall died seized, vested in her.

By the provisions of that section, it is declared that all slaves which a married woman holds, by virtue of the act of 1839, shall, upon her death, " descend and go to the children of her and her said husband jointly begotten; and in case there shall be no child born of the wife, during such, her coverture, then such slaves shall descend and go to the husband and his heirs."

If this law stood unchanged, the right of the appellant to the slaves in controversy would be unquestionable. But by the first section of the act of 28th February, 1846, Hutch. Code, 498, the above section of the act of 1839 was repealed; and the sixth section of the act of 1846 declares, if a married woman " die possessed of slaves, or other personal chattels, as her separate property, leaving issue of her body, either by a former husband, or by her surviving husband, such slaves and other personal chattels, shall descend to her child, or children, in equal shares." It is very clear, that the children of Mrs. Marshall, by the first marriage, according to the provisions of the above statute, are entitled to an equal share of their deceased mother's property, with the appellant Adathea, unless, indeed, the position taken by the counsel for appellants be correct, and the act of 1846 be unconstitutional and void, because it takes away rights, which, under the statute of 1839, had vested in the appellant.

The question then arises, did the appellant, by virtue of the

act of 1839, have any vested right in the slaves in controversy? A vested right has been defined to be "an immediate fixed right of present or future enjoyment." Fearne *on* Contingent Rem. 1. Chancellor Kent says, "an estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment." 4 Kent, Com. 202.

Tested by these definitions, had the appellant a vested right in the slaves? It is clear, beyond dispute, that she did not have, at the passage of the act of 1846, an immediate right of present enjoyment, because, at that time, her mother was alive and had title to the property, the use and possession of which was in the husband during her life, and could "only descend or go to" the child at her death. Did she have an immediate fixed right of future enjoyment? By the act of 1839, the absolute and unqualified title to the slaves was in the wife, "subject to the control and management of the husband; the direction of their labor, and the receipt of the productions thereof by him;" and the slaves so owned "could be sold, by the joint deed of the husband and wife, executed," &c. See § 5, of act of 1839, Hutch. Code, 495. If, then, the title or fee in the slaves was in the wife, and they could be sold and disposed of by the deed of her husband and herself jointly, so as to defeat the inheritance of the child on the death of the mother, the proposition seems clear and unanswerable, that the child did not have any present right of future enjoyment, but only such right in the slaves, as every child has in the property of his ancestor, to wit, a right to inherit and possess the same, according to the laws of the land in force at the death of the ancestor. And it has been held, in relation to property of this kind, that the "rights of heirs arise from the death of the ancestor, and that property found in succession, is regulated by the law in force at the time it is opened, no matter how different or contrary thereto the rule may have been when the estate was acquired." 4 Louisiana, R. 191. Entertaining this view, we do not think the act of 1846 took away any right vested in the appellant by the act of 1839, to the slaves in controversy, and that the appellees are entitled to share them equally with their sister Adathea.

Marshall et al. *v.* King et al.

But, it is said, however the rule on this point may be, the petition should not have been maintained, because no one has administered on the estate of Mrs. Marshall.

Upon examining the authorities upon this point, we find the rule to be established in accordance with this position. In the case of *Browning et al.* v. *Watkins et al.* 10 S. & M. 485, being a suit brought by distributees without the intervention of an administrator, the court says, " they can claim only as distributees, and not as the legal representatives of Watkins. Where there is no general personal representative, a special administration, limited to the subject of the suit, is generally required."

In Maryland, it has been held, that property remaining specifically after the death of the original executor or administrator, is unadministered property, and the appointment of an administrator *de bonis non* in such case, is indispensably necessary to give title to the distributées, even though all the debts are paid. A court of chancery has no power to vest property so situated in the distributees, except through the medium of such administrator. *Hagthorp* v. *Hook, Adm'r,* 1 Gill & Johns. 270.

In New York, a like rule prevails. See *Jenkins* v. *Freyer,* 4 Paige, R. 47; *Woodin* v. *Bagley,* 13 Wend. 456. So also in South Carolina, 2 McCord's Ch. R. 169. And in Kentucky, a similar rule prevails. 5 Monroe, R. 574; 7 Ib. 217.

Upon a review of all the cases, we think the rule very clearly appears to be, that, to enable the distributees to obtain or recover their distributive shares, it is necessary that administration should be taken on the estate, through the medium of which, the property may be recovered and distributed, according to the law. In this view of the case, the demurrer was well taken, and should have been sustained. We must, therefore, reverse the cause, and remand the same, with directions to the court below to sustain the demurrer and dismiss the petition. We have not examined into the question of jurisdiction in this court, as counsel have not made it on either side, but have submitted the case solely on the other points.