## Love v. McDonald.

4-6259                                                148 S. W. 2d 170

Opinion delivered January 27, 1941.

*Boulware & Wilkinson,* for appellant.

*McKay, McKay & Anderson,* for appellee.

Griffin Smith, C. J. This is a suit for specific performance. J. W. Love agreed in writing, for a consideration of $2,500, to convey to J. C. McDonald an oil and gas lease on 73.49 acres of land in Lafayette county.

When the lease was tendered McDonald refused it on the ground, as he alleged, that the title was not merchantable.

In 1905 Howard Whitfield and others conveyed the property to Polly Knott *and her bodily heirs*. In June, 1940, Mrs. Knott, pursuant to act 76, approved March 2, 1929,[1] petitioned for authority to execute an oil and gas lease in favor of Love. The court found that Mrs. Knott owned a life estate and that Love proposed to pay $2,204.70 for a ten-year term, and one dollar per acre per annum as delay rentals. It was decreed that the life tenant should be paid the cash consideration of $2,204.70, together with one-eighth of the oil and gas royalties, constituting one sixty-fourth of the oil or gas produced.[2] The children and such other persons who might subsequently acquire an interest were awarded the delay rentals and seven-eighths of the oil and gas royalties.

The question is whether act 76 is violative of any constitutional rights of the defendants or children of Polly Knott who may yet be born, the presumption being that there is possibility of issue.[3]

Provisions of act 76 essential to a discussion of its validity are shown in the fourth footnote.[4]

---

[1] Pope's Digest, §§ 1800 to 1808.

[2] There are six children: Sudye Knott Mitchell, Augusta Knott McDonald, Viola Knott Nix, Willie Mae Knott Oglesby, Dorothy Fae Knott, and Thomas Knott. In the petition filed by Polly Knott all of the children (they being of age) were made defendants. Each waived service of summons and in writing agreed that the court might award the lease money to their mother. They asked that "such orders as may be necessary, fair, and proper, be made by the court." They also joined in a statement that the mother had reached the age "where, except in rare instances, children are not borne," and "the interest of respondents will not be reduced on that account."

[3] ". . . the presumption being that there may be issue so long as life continues." *Bowen* v. *Frank*, 179 Ark. 1004, at page 1013, 18 S. W. 2d 1037. *Adamson* v. *Wolfe, Trustee*, 200 Ark. 360, at page 368, 139 S. W. 2d 674. [But see Jones on Evidence, v. 1, p. 19, where it is said: "And, accordingly, the court ruled that the ancient presumption, that a woman is capable of bearing issue as long as life continues, can no longer be regarded as conclusive."]

[4] Section 1 provides that "Whenever any land in this state may hereafter be, or shall have heretofore been, devised by will or conveyed by grant to any person by any language which at common law would have vested in such person an estate in fee tail, then such person who at common law would have been invested with a fee tail estate in said lands, and who under the provisions of § 1499 of Crawford & Moses' Digest of the statutes of the state of Arkansas, is or

The insistence is that § 6 of the act is void (a) because it authorizes the life tenant to pursue a course of conduct resulting in waste; (b) because it is an attempt to vary the terms of a written contract in violation of art. 2, § 17,[5] of the state constitution; (c) that it is violative of the Fourteenth Amendment to the constitution of the United States [6] and of art. 2, § 8, of the constitution of Arkansas.[7]

Section 6 of act 76 provides that "The order of the court fixing the proportionate part of the minerals allowed to the life tenant as compensation for damages, and the order confirming the execution of the lease, shall operate to work a divestiture of title of the contingent remaindermen, and each of them, in and to the proportionate part of the minerals allowed to such life tenant,

shall be invested with a life estate therein, is hereby authorized and empowered to execute oil and gas leases on said land, in the manner hereinafter set out."

The procedure requires that a verified petition be filed with the chancery court of the county in which the land or the greater portion of it lies. All persons then in being who under the terms of the will or grant would become invested with title to the land or an interest in it should the life tenant die on the date the petition is filed must be named as respondents. The prayer shall be for authority to execute the proposed lease, ". . . and shall further pray that the court award such life tenant with title absolute in such proportion of the oil, gas, and other minerals, in, on, and under said lands (not exceeding a one-sixteenth interest), together with such proportion of the consideration and delay rentals, as the court shall determine is fair compensation for such life tenant as damages to the life estate by the use of the surface of said lands in the exploration for and the development of oil and gas therefrom."

If the court shall determine that the lease should be executed, authority may be given. Subdivisions (a), (b), and (c), of § 4 deal with powers of the court to make orders, and how the conflicting interests may be harmonized. It is requisite that a trustee be appointed for the contingent remaindermen and reversioners. After the lease has been executed it must be submitted to the court.

Section 6 is discussed in the body of this opinion.

The trustee is under continuing control of the court. "By and with consent of the court" the trustee may invest the funds coming into his hands. Upon death of the life tenant the trustee is required to pay ". . . to the person or persons then entitled thereto all of said moneys so accrued upon order of the chancery court."

[5] "No bill of attainder, *ex post facto* law or law impairing the obligation of contracts shall ever be passed; . . ."

[6] ". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[7] ". . . nor [shall any person] be deprived of life, liberty or property, without due process of law."

absolutely, and in and to the leasehold estate in so far as said·interest is conveyed by said lease, and free said respective interests of any limitations, restrictions, or conditions imposed by the original will or deed.''

For any temporary injury to the property of which the life tenant might complain there is the right of redress, and this is true even though it may be said that the surface injury and inconvenience occasioned by operations under the lease were in consequence of the life tenant's petition that such activities be engaged in, and would not have ensued but for the petition. The reason is that if conservation were the motive, benefits would necessarily inure to the remainderman if the expectant estates should vest.

Due process for determining the extent of such damage and the method of payment are provided by the legislative act. It is the life tenant's duty to conserve the estate.[8]

Glassmire, in his ''Law of Oil and Gas Leases and Royalties,'' (1935), calls attention to the rule announced in 1900 by the Supreme Court of the United States in *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729, wherein the principle was announced that provision might be made for an equitable extraction of oil by the several operators engaged in· taking from a common reservoir or source of supply. That case expressly decided that the co-relative rights of such owners must be maintained, and that the taking by one might be regulated to protect the common interests of all. The Indiana statute under consideration was a waste statute, but Mr. Chief Justice WHITE, in announcing the far-reaching decision, held that the state, under its police power, could regulate the taking for the purpose of protecting all of the collective owners, by obtaining a just distribution arising from the enjoyment by them of the privilege of reducing to possession. [See act 105, approved February 20, 1939; *Lion Oil Company* v. *Bailey,* 200 Ark. 436, 139 S. W. 2d 683.]

[8] *Cherokee Construction Company* v. *Harris,* 92 Ark. 260, 122 S. W. 260, 135 Am. St. Rep. 177.

It is a fact of which courts take judicial knowledge that oil and gas wells drain areas extending beyond the immediate point of operation, and, unless offsets are drilled, deposits pertaining to lands undeveloped may be partially if not wholly lost. It may be prudent, therefore, for the owner of a life estate, who recognizes that production from adjacent territory may diminish reserves which normally would come into the possession of remaindermen, to execute leases in order to conserve the contingent estate.

We do not find that a similar statute has been enacted in another state, and the decision here is one of first impression insofar as it relates to the legislative right to take from remaindermen a part of the expectant fee and vest it in the life tenant.

The federal constitution does not contain an express guarantee that vested rights shall be protected. However, they are fully secured. The provision of the federal constitution prohibiting states from passing laws impairing obligation of contracts has been interpreted generally to embrace only those contracts wherein the subject-matter is property or some object of value; that is, contracts which confer rights that may be asserted in courts of justice. Only those contracts which create in a person or corporation a vested beneficial interest are the objects afforded protection by the prohibition against impairment expressed in art. I, § 10 of the Constitution. As was said in *Douglas* v. *Kentucky,* 168 U. S. 488, 42 L. ed. 553, 18 S. Ct. 199, the provisions of the federal constitution in reference to contracts only inhibit the states from passing laws impairing the obligations of such contracts as relate to property rights, but not to subjects that are purely governmental.

In the chapter on Constitutional Law, 6 R. C. L., § 303, there is this statement: "In regard to the validity of retroactive legislation, so far as it may affect only expectant or contingent interests, the law seems to be well settled that the power thus to deal with such interests resides in the legislature. Laws enacted for the betterment of judicial procedure and the unfettering of estates so as to bring them into market for sale are usually

valid unless they actually impair rights which are vested. It has been said that most civil rights are derived from public laws, and if at any time before the rights become vested in particular individuals, the convenience of the state requires amendments to or the repeal of such laws, individuals have no cause of complaint. The general rule therefore is that the legislature has constitutional authority to change, modify, or abolish expectant estates of all kinds, since a mere expectation of property in the future is not considered a vested right." [9]

To the same effect is Cooley's comment under the title "Interests in Expectancy." [10]

In *Hurst* v. *Hilderbrandt*,[11] at page 341, the distinction between vested and contingent remainders is discussed. There can be no doubt as to the status of the remaindermen in the instant case. Their interests are contingent. The right of a contingent remainderman to mortgage a contingent remainder was denied in *Deener* v. *Watkins*,[12] on the ground that the interest was not property to which the remainderman had a present right or over which he could exercise ownership.[13]

In 19 L. R. A. 247, a footnote reads: "But while there are few, if any, cases, in which vested rights can be taken away by the legislature without violating the constitution of either the state or the nation, it is otherwise with contingent property rights. Thus, while the right of property which has become vested by descent cannot be taken away from the heirs by the legislature (*Jackson* v. *Lyon*, 9 Cow. 664) the prospective interest of those who would constitute the heirs of a person in case of his death while existing laws are in force may

[9] *Butterfield* v. *Sawyer*, 187 Ill. 598, 58 N. E. 602, 79 A. S. R. 246, 52 L. R. A. 75; *Bass* v. *Roanoke Nav. & W. P. Co.*, 111 N. C. 439, 16 S. E. 402, 19 L. R. A. 247 and note; *Anderson* v. *Wilkins*, 142 N. C. 154, 55 S. E. 272, 9 L. R. A. (N. S.) 1145. Notes: 84 A. S. R. 437; Ann. Cas. 1912B, 62. See remainders as to character of estate generally.

[10] Cooley's Constitutional Limitations, Eighth Edition, v. 2, p. 749.

[11] 178 Ark. 337, 10 S. W. 2d 491.

[12] 191 Ark. 776, 87 S. W. 2d 994.

[13] Cf. *Jernigan, Bank Commissioner*, v. *Daughtry*, 194 Ark. 623, 109 S. W. 2d 126.

be taken away by a change of the laws of descent. *Marshall* v. *King,* 24 Miss. 85. . . . Another illustration of the power of the legislature to cut off contingent interests is in the case of estates in fee tail. In several cases it has been held that the legislature may authorize a tenant in tail to convey an estate in fee simple or may ratify such a conveyance, thus cutting off the contingent interests of all who might otherwise succeed to the estate.''

The Domestic Relations Law of New York provides that illegitimate children whose parents shall thereafter intermarry shall become legitimatized for all purposes, except that estates or interests vested or trusts created before marriage of parents of child shall not be divested. In re *Sheffer's Will,* (in re *Brooklyn Trust Co.*), 249 N. Y. Supp. 102, it was held that a remainder given testator's children or their lawful issue after widow's death was not so vested as to render inclusion of illegitimate children, whose parents afterward married, unconstitutional as denying due process.

A headnote to *Ætna Life Ins. Co.* v. *Hoppin et al.,* 214 Fed. Rep. 928. (Circuit Court of Appeals, Seventh Circuit), is: ''A deed conveyed property to H. and to S., his wife, during their natural life and the life of the survivor, and at the time of the death of the survivor to the heirs of the body of S., their heirs and assigns. *Held,* that the remainder given to the heirs of the body of S. was not vested, because it did not stand ready throughout its existence to take effect in possession whenever and however the preceding estate determined. The words 'heirs of the body,' being intended to have their ordinary legal meaning, were not synonymous with 'children'; and since the remainder to such heirs was contingent, an execution sale of the property under a judgment against them during the continuance of the life estate passed no title.'' [14]

---

[14] An excerpt from *Green* v. *Edwards,* 31 R. I. 1, 77 Atl. Rep. 188. At page 196 quoting from *Comstock* v. *Gay,* 51 Conn. 45, is: "But in the case before us the party objecting to the validity of the act of the legislature had not at the time a vested interest. His interest was a mere possibility. He had no estate in the premises and it was not certain that he ever would have. Had he died during the lifetime of his father, as his brother Joseph did, no estate would ever have

In the chapter on Constitutional Law, 12 C. J., p. 955, § 485, the rule as to vested rights is stated as follows:

"Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. On the other hand, a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right." Section 496 of the same text is:

"The legislature has no power to alter or destroy by statute the nature of vested estates in property. Indeed, authority is not wanting to the effect that a contingent remainder may not be impaired or destroyed by a statute passed after its creation, but the better opinion is that contingent remainders may be impaired or abolished at any time before they become vested. . . . [But see *Moore et al* v. *Reddel,* 259 Ill. 36, 102 N. E. 257.]

From conclusions reached by judges whose opinions constitute the majority rule, it seems clear that a contingent remainder is an interest not capable of being transferred or mortgaged, nor can it be sold under execution for debt. The person whose status as a remainderman is created by deed conveying to A. and his bodily heirs, or the heirs of his body, cannot, prior to termination of the life estate, know whether he will predecease the life tenant; nor can he ascertain the extent of the prospective estate until possibility of issue of the life tenant is at an end; hence the expectancy, while having possibility of value, is not property within contemplation of the Fourteenth Amendment. There is no violation of contract, a particular person not having been named as a remainderman. Because the interest is not property vested in him. Naked possibilities or mere expectancies of this character are not property in the ordinary sense. They cannot be disposed of by will or deed and are not subject to attachment. . . . They are, therefore, not property and are not regarded as vested rights beyond legislative control." [However, in the Green-Edwards Case, it was held that a legislative act of 1906 and re-enactment which went into effect in 1909 insofar as they authorized the barring of equitable estates tail and all remainders and reversions expectant thereon created and in existence prior to passage of the act, was void as being in contravention of the constitution of Rhode Island and the 14th Amendment to the Constitution of the United States. Insofar as it acted prospectively, the act was held to be valid.]

which may be the subject of a valid sale, it is not within the protection of art. 2, § 8, of our constitution.

The judgment is reversed, and the cause is remanded with directions to sustain the demurrer to the answer.