CURTISS ANDERSON *v.* FRED MONTGOMERY WEBB ET AL

5-3986                                              406 S. W. 2d 871

Opinion delivered October 17, 1966

*H. G. Partlow Jr.,* for appellant.

*Marcus Evrard,* for appellee.

HUGH M. BLAND, Justice. The only issues involved

in this appeal are whether or not Act No. 163 of The General Assembly of Arkansas for the year 1957 [Ark. Stat. Ann. § 50-405.1-2 (Supp. 1965)] is constitutional and whether or not a deed executed in conformity with its provisions is sufficient to terminate an estate tail. The facts are stipulated by the parties.

In October 1965 appellant submitted to appellee Fred Montgomery Webb a written proposal to purchase from him a tract of land described therein. Webb accepted the proposal. In accord with the terms of the proposal, appellant deposited in escrow with Blytheville Title Company $30,000.00 to cover full payment of the purchase price to be delivered if and when title to the property was found to be good and upon failure of title, to be returned to appellant.

The title was examined and by reason of the following facts, the title was found to be encumbered by the possibility of an estate tail.

In the year 1943 Mrs. M. J. Webb and J. H. Webb, her husband, being then owners of the property that is the subject of this action, executed and delivered to Fred Montgomery Webb (then a minor, 5 years of age) a deed by which they conveyed to him subject lands for the period of his natural life and created an estate tail to become effective after his death.

In the year 1965 Mrs. M. J. Webb and J. H. Webb, her husband, who were the grantors in the deed creating the estate tail; Fred Montgomery Webb, an unmarried man and life tenant under said deed; Jesse H. Webb, Jr., Sara Lynn Webb, wife of Jesse H. Webb, Jr., Louise Webb Fincannon and Margaret Webb Hay, all persons then in being who might or could ever become remaindermen under said deed, executed and delivered to Ann Norton, a female person of the City of Blytheville, Arkansas, a warranty deed with the intention of vesting in her fee simple title to subject lands. It was stipulated

that in the execution of this deed all provisions of Act No. 163 were followed and complied with.

On August 17, 1965, Ann Norton executed and delivered to Fred Montgomery Webb her warranty deed conveying subject land to him. It was stipulated that Fred Montgomery Webb was an unmarried man and had no bodily descendants.

The only matter in controversy between appellant and appellees in this cause is the question whether or not the deed that was given by all possible remaindermen now in being to Ann Norton was sufficient under the provisions of Act No. 163 of 1957 to dissolve the estate tail that was created by the deed from M. J. Webb and her husband to Fred Montgomery Webb.

Appellant, acting upon advice that the title was bad, made demand upon the escrow agent for surrender of his earnest money and a return to appellee of the deed held in escrow. Upon refusal, appellant filed suit in chancery court to rescind his proposal to buy for failure of title.

On trial the chancellor found that the provisions of Act No. 163, when properly followed, are adequate and sufficient to terminate an estate tail when executed by all then in being who could ever be remaindermen; that the deed in question in this cause was executed by the creators of said estate tail and by all persons in being who could ever be or become remaindermen thereunder; and that said deed did effectively terminate said estate tail and vest title in fee simple in the appellee Fred Montgomery Webb. The chancellor further directed the escrow agent, Blytheville Title Company, to make delivery of the deed to appellant and to pay over the purchase money held by it to appellee Fred Montgomery Webb.

From this holding appellant has perfected his appeal. Appellant contends that Act No. 163 of 1957 vio-

lates Article I, § 10 (paragraph 1) of the Constitution of the United States which provides:

"No state shall * * * pass any Bill of Attainder, ex post facto law, or Law impairing the Obligation of Contracts * * * "

Appellant further contends that the Act violates the prohibition of § 21, Article 2 of the Constitution of Arkansas which provides:

"No person shall be taken or imprisoned, or disseized of his estate freehold, liberties or privileges * * * except by the judgment of his peers or the law of the land; * * * "

For many years, title examiners, lawyers, jurists and the general public have been plagued with the errors that unthinking or ill-advised persons commit when they entail property and thereby make it lose its value to the owners and the community. By the joint efforts of the Arkansas Bar Association, the staff of the University of Arkansas School of Law, and many others, Act No. 163 of 1957 was enacted into law. It was considered to be very necessary, expedient and desirable that a method be provided by which an estate tail may be terminated and title vested in fee simple. The preamble to Act No. 163 reads as follows:

"Whereas, the estate tail is a relic of medieval times and seldom desirable in view of the current necessity for credit and for transfer of title incident to the growth of communities, but nevertheless such an estate is often created without a realization of the delay and difficulty imposed on a conveyance of the land involved, which imposition is later sought to be dissolved; and

Whereas, the common law remedy of fine and common recovery for dissolution of said estates is no longer available as a method of dissolving same and a substitute therefore should be provided; * * * "

The first two sections of the Act are as follows:

"Section 1. Any estate which under the common law would be deemed an estate tail or a fee tail estate, or any estate created by reason of a conveyance to a grantee or grantees and the heirs of his or her body or to other contingent remaindermen, may be dissolved by the grantor creating such an estate and all life tenants and all of the other persons then living who might be remaindermen in event of the death of the life tenant or tenants executing a conveyance of the fee. Such conveyance shall vest in the grantee the fee simple title to the lands therein conveyed.

Section 2. The method of extinguishing the above mentioned estates shall apply equally to those estates now in existence and those which may hereafter come into existence."

We have passed on the question involved here in the case of *Love* v. *McDonald,* 201 Ark. 882, 148 S. W. 2d 170. In that case the court had before it Act 76 of The General Assembly of Arkansas of 1929. Section 1 of that Act provides:

"Whenever any land in this State may hereafter be, or shall have heretofore been, devised by will or conveyed by grant to any person by any language which at common law would have vested in such person an estate in fee tail, then such person who at common law would have been invested with a fee tail estate in said lands, and who under the provisions of Section 1499 of Crawford & Moses Digest of the Statutes of the State of Arkansas, is or shall be invested with a life estate therein, is hereby authorized and empowered to execute oil and gas leases on said land, * * *"

The contention was there made that the Act violated both the State and Federal Constitutions. In disposing of this question the court said:

238

"The federal constitution does not contain an express guarantee that vested rights shall be protected. However, they are fully secured. The provision of the federal constitution prohibiting states from passing laws impairing obligation of contracts has been interpreted generally to embrace only those contracts wherein the subject-matter is property or some object of value; that is, contracts which confer rights that may be asserted in courts of justice. Only those contracts which create in a person or corporation a vested beneficial interest are the objects afforded protection by the prohibition against impairment expressed in Art. 1, § 10 of the Constitution. As was said in *Douglas* v. *Kentucky,* 168 U. S. 488, 42 L. ed. 553, 18 S. Ct. 199, the provisions of the federal constitution in reference to contracts only inhibit the states from passing laws impairing the obligations of such contracts as relate to property rights, but not to subjects that are purely governmental.

In the chapter on Constitutional Law, 6 R. C. L., § 303, there is this statement: 'In regard to the validity of retroactive legislation, so far as it may affect only expectant or contingent interests, the law seems to be well settled that the power thus to deal with such interests resides in the legislature. Laws enacted for the betterment of judicial procedure and the unfettering of estates so as to bring them into market for sale are usually valid unless they actually impair rights which are vested. It has been said that most civil rights are derived from public laws, and if at any time before the rights become vested in particular individuals, the convenience of the state requires amendments to or the repeal of such laws, individuals have no cause of complaint. The general rule therefore is that the legislature has constitutional authority to change, modify, or abolish expectant estates of all kinds, since a mere expectation of property in the future, is not considered a vested right.' "

In the case before us, the only question being the constitutionality of the Act, we hold that it is not contrary to any provision of the State Constitution nor does it violate the Federal Constitution.

Finding no error, the decree of the chancery court is affirmed.

McFADDIN, J., dissents.

ED. F. McFADDIN, Justice, dissenting. In the present case the Majority is holding that the Legislature in 1957 could validly effectuate a change in a deed that had been executed in 1943; and I cannot agree that such retroactive legislation is valid.

I have very little sympathy with estates tail, and I think it would be wise legislation to hold that in deeds executed after the adoption of such legislation the first taker took the fee simple. Some states have adopted such statutes. This is all discussed in detail in 19 Am. Jur. p. 506 *et seq.*, "Estates," § 46 *et seq.* Particularly, I call attention to the following in § 55 of the article: "In most of the jurisdictions of this country statutes have been passed which serve to eliminate, modify, or abolish estates tail . . . In a few jurisdictions the law forbids generally the creation of entailed estates."[1]

Even though entertaining the above views, I still must dissent from the Majority in the present case, because I do not believe the legislature can validly pass a law in 1957 changing the effects of a deed made in 1943; and I think the case of *Love* v. *McDonald,* 201 Ark. 882, 148 S. W. 2d 170, is wrong if it is understood to so hold. That case was decided under Act No. 76 of 1929, relating to oil and gas leases, and most of the language about Act No. 76 of 1929 abolishing estates tail is dictum.

[1] In 161 A.L.R. 612 there is an exhaustive annotation on the subject, "Nature of estate created by grant or gift to one of his children."

In the case before us Mr. and Mrs. Webb executed a deed in 1943 which created an estate tail. Fred Montgomery Webb has a life estate and the subsequent owners are to be determined at his death. Fred Montgomery Webb is still living, descent will not be cast until his death, and the possibility of issue is not extinct. On the death of Fred Montgomery Webb someone will be entitled to the property, and such beneficiary cannot be determined at this time.

I think we should hold as regards Act No. 163 of 1957 just as we held as regards Act No. 340 of 1947: it is valid prospectively, but void retroactively. In *Jenkins* v. *Jenkins,* 219 Ark. 219, 242 S. W. 2d 124, the parties owned property by entirety in 1946. By Act No. 340 of 1947 the Legislature empowered the chancery courts, on granting a divorce decree, to dissolve an entirety estate and change it to a tenancy in common. The question before us was whether the Act No. 340 of 1947 was constitutional when applied to an entirety estate created before the passage of the Act. We held that the 1947 enactment could not change or vary the rights of an estate by the entirety created before the adoption of said legislation. I think the same rule applies in the case at bar, and the 1957 legislation cannot constitutionally change the rights and effects of a deed executed in 1943.

Therefore, I respectfully dissent.