VanALSTINE v SWANSON

Docket No. 90585. Submitted June 16, 1987, at Grand Rapids. Decided
        November 16, 1987. Leave to appeal applied for.

> George and Effie VanAlstine conveyed certain property to their
> daughter, Georgia Swanson, and her husband, Stanley Swan-
> son. The VanAlstines reserved a life estate in the property.
> Following the deaths of Effie VanAlstine and Georgia Swanson
> and with George VanAlstine continuing to reside on the prop-
> erty, Stanley Swanson entered into an oil and gas lease with an
> oil company, the terms of which provided for a bonus payment
> of $6,800, delay rentals of $40 per year for four years and
> $8,000 for the fifth year, and a $\frac{3}{16}$ royalty. The lease was
> subsequently assigned to Sun Oil Company, who paid Stanley
> Swanson the $6,800 bonus plus three years' delay rentals, but
> no royalties as no oil or gas has thus far been removed from
> the property. George VanAlstine brought an action in district
> court against Stanley Swanson, claiming that as the life tenant
> he, and not defendant as remainderman, was entitled to the
> bonus and delay rental payments paid pursuant to the oil and
> gas lease. The district court granted summary disposition in
> favor of plaintiff, ruling that no genuine issues of material fact
> existed and plaintiff was entitled to the monies sought as a
> matter of law. On appeal to the Mecosta Circuit Court, that
> court, Lawrence C. Root, J., affirmed. Defendant sought and
> was granted leave to appeal to the Court of Appeals.
>
> The Court of Appeals *held:*
>
> 1. The district court had jurisdiction to decide this case since
> plaintiff's action is not an action to determine an interest in
> land that is exclusively under the equitable jurisdiction of a
> circuit court.
>
> 2. Delay rentals are generally treated as ordinary rentals for

REFERENCES

Am Jur 2d, Gas and Oil §§ 6, 54 *et seq.*; 124, 125.

Am Jur 2d, Life Tenants and Remaindermen, §§ 25 *et seq.*; 154-157.

Rights of tenant for life or for years and remaindermen inter se in
    royalties or rents under oil, gas, coal, or other mineral lease. 18
    ALR2d 98.

Oil and gas royalty as real or personal property. 56 ALR4th 539.

the occupancy of land and are properly payable to the owner of the present possessory interest, which in this case is plaintiff.

3. A bonus payment made by the lessee in an oil and gas lease is viewed as consideration for the grant of the right to presently occupy the land for purposes of, and to the extent necessary for, exploration and recovery and is properly payable to the holder of the present possessory interest.

Affirmed.

1. ESTATES IN PROPERTY — OIL AND GAS LEASES — LIFE ESTATES — FUTURE INTERESTS.

An owner of a life estate in real property is without the right to develop the property's minerals, either personally or through a lessee, by reason of the fact that it constitutes waste; likewise, the owner of a future interest, since he is not presently entitled to possession of the land, is without the right to develop the minerals, personally or through a lessee; drilling operations by either the life tenant or the owner of the future interest may be enjoined by the other; the mere execution of an oil and gas lease by either the life tenant or the owner of the future interest does not constitute a wrong to the other party; as between the lessor and the lessee, the lease is valid.

2. ESTATES IN PROPERTY — OIL AND GAS LEASES — LIFE ESTATES — FUTURE INTERESTS.

If either a life tenant or the owner of the future interest in real property executes a lease which purports to give the lessee an unrestricted right to enter upon the premises to develop the property's minerals, the non-joining successive owner may elect to ratify the lease and share in the benefits accruing therefrom on the same basis as if both had originally joined in the lease.

3. GAS AND OIL — OIL AND GAS LEASES — PAYMENTS TO LESSOR.

Oil and gas leases generally provide for three types of payments to lessors: (1) a bonus payment, which is a cash consideration paid by the lessee for the execution of an oil and gas lease by the landowner; (2) a delay rental, which is a sum paid by the lessee for the privilege of deferring drilling or production until some future date; and (3) a royalty, which is paid to the lessor if and when oil or gas is actually produced and is a share of the production or profits, free of the expenses of production.

4. ESTATES IN PROPERTY — LIFE ESTATES — FUTURE INTERESTS.

A life tenant of real property is entitled to the income or profits from the property during the continuance of the life estate, while the principal of the estate belongs to the remainderman.

5. Estates in Property — Life Estates — Future Interests.

   A life tenant of real property is entitled to possession, control, and enjoyment of the property to the exclusion of the remainderman but may not commit waste; the remainderman, on the other hand, is not entitled to actual or constructive possession of the property until the termination of the preceding estate.

6. Gas and Oil — Oil and Gas Leases — Delay Rentals.

   Delay rentals paid pursuant to an oil and gas lease involving real property that is subject to a life estate and a future interest are generally treated as ordinary rentals for the occupancy of land and therefore income payable absolutely to the owner of the life estate.

7. Property — Profit a Prendre.

   A profit a prendre is primarily the power to acquire, by severance or removal from another's land, something previously constituting part of the land, such as minerals, and is distinguishable from a mere license or easement because it includes the right to remove.

8. Gas and Oil — Oil and Gas Leases — Bonus Payments.

   A bonus payment paid pursuant to an oil and gas lease involving real property that is subject to a life estate and a future interest is payable to the life tenant because such payment is made as consideration for the grant of the right to presently occupy the land for purposes of, and to the extent necessary for, exploration and recovery.

*Michael D. Hults,* for plaintiff.

*Philip A. Clancey & Associates, P.C.* (by *Philip A. Clancey*), for defendant.

Before: Sawyer, P.J., and MacKenzie and W. J. Caprathe,\* JJ.

MacKenzie, J. Defendant appeals by leave granted from a circuit court opinion affirming the district court's grant of summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(10). We affirm.

The facts are undisputed. On April 6, 1973,

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff, George VanAlstine, and his wife, Effie VanAlstine, conveyed by warranty deed certain property to their daughter, Georgia Swanson, and her husband, defendant Stanley Swanson. The VanAlstines reserved a life estate in the property and plaintiff apparently still resides there. Effie VanAlstine died in 1973 and Georgia Swanson died in 1980.

On May 26, 1981, defendant, the remainderman of the property, entered into an oil and gas lease with Western States Oil Company, Inc. The lease provided for a bonus payment of $6,800, delay rentals of $40 per year for four years and $8,000 for the fifth year, and a 3/16 royalty. A $6,800 check representing the bonus payment, payable to plaintiff, was not honored and the lease was eventually assigned to Sun Oil Company. Sun Oil subsequently paid the $6,800 bonus plus three years' delay rentals to defendant. It appears that no oil or gas has been removed from the property and no royalties have been paid.

Plaintiff, as life tenant, commenced the instant district court action on July 11, 1984, alleging that as the life tenant he, and not defendant remainderman, was entitled to the bonus and delay rental payments made pursuant to the oil and gas lease. Defendant filed a motion to remove the case to circuit court and both parties filed motions for summary disposition. Without elaboration, the district court judge found that that court had jurisdiction to decide the case. He then determined that plaintiff was entitled to the bonus payment and delay rentals paid to defendant. The circuit court affirmed both rulings.

On appeal to this Court, defendant again challenges the district court's jurisdiction to decide this case. According to defendant, this action is actually an action to determine interest in land,

MCL 600.2932; MSA 27A.2932. Defendant contends that because such actions are equitable in nature, see MCL 600.2932(5); MSA 27A.2932(5), they may only be brought in circuit court. MCL 600.8315; MSA 27A.8315.

We disagree. MCL 600.2932; MSA 27A.2932 codifies actions to quiet title and authorizes suits to determine competing parties' respective interests in land. Here, plaintiff has not alleged that the lease represents an invalid incumbrance upon the land, nor has he sought a determination as to the parties' interests in the land; it is undisputed that plaintiff has a life interest and defendant is the remainderman. Further, plaintiff has never asserted that defendant has disrupted his right to quiet enjoyment of the premises, an historically equitable claim. See 31 CJS, Estates, § 67, p 138. Plaintiff's sole claim was that, as life tenant, he was entitled to the lease proceeds paid to defendant. The district court had jurisdiction to decide that question.

The substantive issue this case presents is whether the life tenant or the remainderman of property subject to an oil and gas lease is entitled to the proceeds of the lease.[1] The issue is one of first impression in this state.

---

[1] In his appellate brief, defendant argues:

It is Defendant-Appellant's position that the remainderman always has the right and privilege of executing a lease, conveyance, mortgage, whatever of HIS remainder interest with any third party and the life tenant cannot complain. As long as the remainderman does not convey or attempt to convey any interest owned by the life tenant, the life tenant has no cause of action. The lessee has not complained that it has received something less than what it bargained for. Neither has the lessee undertaken any action under its lease with the remainderman, to the detriment of the estate of the life tenant. In the instant case the life tenant has not been injured or damaged by the lease of the remainderman's interest and therefore he has no cause of action.

The rights of life tenants and remaindermen, in the context of oil and gas leasing and development, are discussed in 2 Williams & Meyers, Oil & Gas Law, §§ 512.1 and 512.2, pp 638-642:

Absent special considerations . . . the life tenant is without the right to develop the minerals, either personally or through a lessee, by reason of the fact that this constitutes waste. Likewise, the owner of a future interest, since he is not presently entitled to possession of the land, is without the right to develop the minerals, personally or through a lessee. Drilling operations by either the life tenant or the owner of the future interest, or by a lessee of either, may be enjoined by the other. . . .

* * *

The mere execution of a lease by either the life tenant or the owner of the future interest does not constitute a wrong to the other party. As between the lessor and the lessee, the lease is valid.

* * *

The most frequently occurring question arising from leases by a life tenant and owners of future interests concerns the division of the proceeds of the lease. It is useful in this connection to distinguish among several typical situations:

* * *

(2) If either the life tenant or the owner of the future interest executes a lease which purports to give the lessee an unrestricted right to enter upon the premises to develop the minerals, the non-joining successive owner may elect to ratify the lease and share in the benefits accruing therefrom,

---

This is a less than honest appraisal. The lease in question does not purport to limit the lessee to the remainderman's interest; it calls for development of oil and gas drilling during the life tenancy of plaintiff. The real question here, where plaintiff has not sought to enjoin the drilling by lessee and merely wishes the Court to properly allocate the bonus and delay rentals, is whether he is entitled to such bonus and delay rentals.

on the same basis as if both had originally joined in the lease.

In the instant case, it would appear that plaintiff has ratified the subject lease, since he has been aware of it since its execution, has once before attempted to collect the $6,800 bonus, and has since continued to seek the lease proceeds. We turn, then, to the law of distribution as if both plaintiff and defendant had originally joined in the lease.

Oil and gas leases, such as the one at issue here, generally provide for three types of payments to the lessors: a bonus payment, a delay rental, and a royalty. The bonus payment is a cash consideration paid by the lessee for the execution of an oil and gas lease by the landowner. 8 Williams & Meyers, Oil and Gas Law, p 80. Payment is made when the lease is executed. A delay rental is a sum paid by the lessee for the privilege of deferring drilling or production until some future date. *Id.,* pp 206-207. A royalty is paid to the lessor if and when oil or gas is actually produced. It is defined as a share of the production or profits, free of the expenses of production. *Id.,* p 770. The allocation of royalties is not at issue here, since no production has taken place.[2] Thus we need only

[2] Plaintiff concedes that, under prevailing law, he would not be entitled to royalties paid. Plaintiff is correct that in the majority of jurisdictions royalties from minerals produced by mining or drilling operations commenced after the creation of a life estate are allocated to the remainderman under the so-called "unopened mine rule." The life tenant is entitled only to the interest from such royalties after their investment. See generally, Anno: *Rights of tenant for life or for years and remaindermen inter se in royalties or rents under oil, gas, coal or other mineral lease,* 18 ALR2d 98, and cases cited therein. See also 2 Williams & Meyers, *supra,* § 512.2, pp 640-647 and cases cited therein. The theory behind this allocation is that, by commencing new mining or drilling operations, the life tenant commits waste permanently injuring the future interest. The royalties thus serve as a substituted corpus to be preserved for the benefit of the owner of

decide whether plaintiff, as life tenant, is entitled to the delay rentals and the bonus.

Allocation of oil and gas lease proceeds between a life tenant and a remainderman is largely governed by common-law principles regarding the rights of present and future interests. At common law, a life tenant of real property is entitled to the income or profits from the property during the continuance of the life estate, 31 CJS, Estates, § 41, p 72; 2 Powell, Law of Real Property, ¶ 203[2], p 124, while the principal of the estate belongs to the remainderman, 31 CJS, Estates, § 41, pp 73-74. The life tenant is entitled to possession, control, and enjoyment of the property to the exclusion of the remainderman but may not commit waste. 31 CJS, Estates, §§ 38, 43, pp 68-69; 79-80; 2 Powell, *supra,* ¶ 203[2], pp 120-121. The remainderman, on the other hand, is not entitled to actual or constructive possession of the property until the termination of the preceding estate. 31 CJS, Estates, § 85, p 160.

In the instant case, both the district court and the circuit court concluded that plaintiff, as life tenant, was entitled to the delay rentals paid to defendant under the subject oil and gas lease. We agree. Since delay rentals represent the reservation of the right to drill, and do not involve waste, they are generally treated as ordinary rentals for the occupancy of land and therefore income payable absolutely to the owner of the present interest in the land. See Anno: *Rights of tenant for life or for years and remaindermen inter se in royalties or rents under oil, gas, coal, or other mineral*

the future interest until it becomes possessory. We note, however, that the "unopened mine rule" has been expressly repudiated by our Supreme Court, at least to the extent that it operated to deprive a widow, under the dower statutes, of a share of royalties from mines on lands valuable only for minerals. *Seager v McCabe,* 92 Mich 186 (1892).

*lease,* 18 ALR2d 98, 125 and cases cited therein. Under this analysis, plaintiff is entitled to the delay rentals which defendant received under the instant lease, as the district court and circuit court held.

Plaintiff's entitlement to the $6,800 bonus payment is more problematic. There is an irreconcilable conflict in authority as to whether a bonus paid for an oil and gas lease is income payable absolutely to the owner of the present interest in the land or is principal to be conserved for the remainderman. 18 ALR2d 98, *supra,* p 123. The majority of jurisdictions which have considered the question consider the bonus as principal. This conclusion is based upon the theory that the bonus is a cash consideration paid for a portion of the realty, the oil and gas in place. 18 ALR2d 98, *supra,* p 123 and 2 Williams & Meyers, *supra,* § 512.2, pp 640-647 citing *Sewell v Sewell,* 363 Ill 166; 1 NE2d 492 (1936); *Mills v Mills,* 275 Ky 431; 121 SW2d 962 (1938); *In re Bruner's Will,* 363 Pa 552; 70 A2d 22 (1950); *Andrews v Brown,* 283 SW 288 (Tex Civ App, 1926), aff'd with directions 10 SW2d 707 (Tex Com App, 1928); *San Antonio Loan & Trust Co v Hamilton,* 155 Tex 52; 283 SW2d 19 (1955). Other jurisdictions consider the bonus to be income payable to the owner of the present interest in the land. These jurisdictions reason that the bonus represents payment for the use of the land and not purchase money paid for any oil and gas which may be extracted. 18 ALR2d 98, *supra,* pp 124-125 and 2 Williams & Meyers, *supra,* § 512.2, citing *Aldridge v Houston Oil Co,* 116 Okla 281; 244 P 782 (1926); *Dixon v Mapes,* 181 Okla 376; 73 P2d 1131 (1937); *Franklin v Margay Oil Corp,* 194 Okla 519; 153 P2d 486 (1944); *Love v McDonald,* 201 Ark 882; 148 SW2d 170 (1941).

We think that the sounder position is repre-

sented by the line of cases holding that bonus payments are income payable to the holder of the present interest in the property. We regard an oil and gas lease as the grant of a profit a prendre. A profit a prendre is primarily the power to acquire, by severance or removal from another's land, something previously constituting part of the land, such as minerals. *Evans v Holloway Sand & Gravel, Inc,* 106 Mich App 70, 78; 308 NW2d 440 (1981). It is distinguishable from a mere license or easement because it includes the right to remove. 2 Sengstock, Real Estate Transactions, § 15.1300. A profit a prendre in the form of a right to carry on mining operations transfers no present interest in the minerals in place. The holder of the profit owns the minerals only after severance. *Id.,* § 15.1400. There is no right to use the land except as incident to the mining. Until the right is actually exercised and possession is taken, it is a floating, indefinite, mere incorporeal right. *Harlow v The Lake Superior Iron Co,* 36 Mich 104, 119 (1877). Similarly, under any oil and gas lease, the lessee acquires the right to presently use and occupy that portion of the surface of the land needed to explore the premises for oil and gas. The failure to find oil or gas does not give the lessee the right to rescind the contract or to recover damages.

Since an oil and gas lease involves a profit a prendre, the bonus paid to secure the profit must be viewed as consideration for the grant of the right to presently occupy the land for purposes of, and to the extent necessary for, exploration and recovery. It is an "up front" payment for the *power* to remove oil and gas, in no manner contingent upon the actual recovery of oil and gas, if any. Under this view, the bonus cannot be considered a payment for oil and gas in place, the

premise of the cases holding that the bonus is allocated to the remainderman. On the contrary, logical analysis concludes that payments received as compensation for the right to invade the present possessory interest should be deemed income to the holder of that interest, the life tenant.

Because the bonus represents payment for a right to use the surface of the land and does not constitute waste, we conclude that the bonus payment on an oil and gas lease is to be allocated to the owner of the present possessory interest in the land. We find no error in the determination of the district court and circuit court that plaintiff is entitled to the bonus and delay rentals paid to defendant pursuant to the oil and gas lease.

Affirmed.